IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| RONALD S. MARRIOTT, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2:22-CV-03197-NKL |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

**ORDER**

Plaintiff Ronald S. Marriott seeks review of the denial by the Commissioner of the Social Security Administration (the "Commissioner") of his application for a period of disability, Disability Insurance Benefits, and Supplemental Security Income ("SSI"). Mr. Marriott argues reversal is required because the ALJ improperly evaluated Mr. Marriott's testimony regarding his need to use the bathroom when crafting a residual functional capacity ("RFC"), and consequently assessed an RFC regarding the "least" number of restroom breaks he would require, rendering the RFC impermissibly vague. (Doc. 9, at 6). As discussed in more detail below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

**I.   BACKGROUND**

On March 19, 2020, Mr. Marriott protectively filed his Title II application for a period of disability and Disability Insurance Benefits, and a Title XVI application for SSI, claiming an alleged onset date of February 20, 2020. *See* Tr. 12. These claims were denied initially and upon reconsideration, and Mr. Marriott requested a hearing before an administrative law judge. On September 10, 2021, Administrative Law Judge Jo Ann Draper (the "ALJ") held a telephone

1

hearing on Mr. Marriott's claims. The ALJ ultimately concluded that Mr. Marriott was not disabled. Tr. 16.

Applying the five-step process laid out in 20 C.F.R. § 404.1520(a), the ALJ concluded that Mr. Marriott had several severe impairments: anxiety disorder; social anxiety disorder; and overactive bladder disorder. Tr. 18. However, none of these impairments—individually or cumulatively—were found to meet or equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 21. The ALJ then found Mr. Marriott had the RFC to perform a full range of work at all exertion levels with some nonexertional limitations. Tr. 22. Specifically, Mr. Marriott has the ability and concentration for simple tasks involving routine decision-making, involving simple judgment, and only occasional workplace changes. *Id.* He can have occasional contact with the public, co-workers, and supervisors. *Id.* He needs bathroom breaks at least every two hours. *Id.*

The ALJ then determined that, considering Mr. Marriott's age, education, work experience, and RFC, he could perform work that existed in significant numbers in the national economy. Tr. 30. Based upon the testimony of a vocational expert, the ALJ concluded that Mr. Marriott could work as a Lavatory Equipment Cleaner, Machine Packager, or Salvage Laborer. Tr. 31.

Because Mr. Marriott could perform work that was available in significant numbers in the national economy, the ALJ found him not disabled. Tr. 31.

Mr. Marriott appealed the ALJ's decision to the Appeals Council, which ultimately affirmed the ALJ's decision. Accordingly, the ALJ's decision is a final decision of the Commissioner and is ripe for judicial review.

## II. LEGAL STANDARD

The Court must affirm the Commissioner's denial of social security benefits so long as "there was no legal error" and "the findings of fact are supported by substantial evidence on the record as a whole." *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (internal citation omitted). "Substantial evidence is 'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the ALJ's conclusion.'" *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015) (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)). The Court must consider evidence that both supports and detracts from the ALJ's decision. *Id.* "[A]s long as substantial evidence in the record supports the Commissioner's decision, [the Court] may not reverse it because substantial evidence [also] exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently." *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015) (quotation marks and citation omitted). Ultimately, the Court must "defer heavily to the findings and conclusions of the Social Security Administration." *Michel v. Colvin*, 640 F. App'x 585, 592 (8th Cir. 2016) (quotation marks and citations omitted).

## III. DISCUSSION

The issue in this case is simple: whether the ALJ appropriately accounted for Mr. Marriott's overactive bladder disorder, a severe impairment, by finding in the RFC that Mr. Marriot had a need to use the bathroom "at least" every two hours. Tr. 22. Mr. Marriott claims that the ALJ erred by concluding that Mr. Marriott needed to take bathroom breaks at least every two hours, rather than approximately every thirty to sixty minutes, as Mr. Marriott testified. Furthermore, Mr. Marriott claims that the ALJ's RFC was improper because it assessed the least number of bathroom breaks he would require, not the greatest. Mr. Marriott claims that because it is framed

3

around the least number of breaks he might need, the RFC does not reflect the "most" he can do with his severe impairments, as it must. Both were error.

### A. Whether the ALJ's Conclusion that Mr. Marriott Must Use the Restroom Every Two Hours Requires Remand

While the ALJ did account for the limitations stemming from Mr. Marriott's need to use the restroom frequently, there are at least two problems with the restriction the ALJ adopted into the RFC. First, the ALJ's fact-finding is insufficient to allow the Court to determine why the ALJ picked a two-hour interval between restroom breaks. Second, the Court can find no *evidence* to support that interval. Accordingly, remand is warranted to address this very narrow issue.

The Court begins with the ALJ's decision. The Court cannot tell how the ALJ arrived at a two-hour interval between bathroom breaks. This Court will not reverse an ALJ simply because an opinion could have been clearer. *Noerper v. Saul*, 964 F.3d 738, 746 (8th Cir. 2020) (internal quotations omitted). However, remand is warranted "where the ALJ's factual findings, considered in light of the record as a whole, are insufficient to permit this Court to conclude that substantial evidence supports the Commissioner's decision." *Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008); *see also Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) (remanding because the ALJ's factual findings were insufficient for meaningful appellate review). At minimum, the ALJ must build a logical bridge between the evidence and the RFC she creates; she does so by "includ[ing] a narrative discussion describing how the evidence supports each conclusion," and "[t]he [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *See* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7; *Lee R. v. Kijakazi*, No. CV 20-1989, 2022 WL 673259, at *4 (D. Minn. Mar. 7, 2022) (requiring ALJ to connect evidence to ultimate RFC created); *cf. Lewis v. Colvin*, No. 3:14-CV-05001-NKL, 2014 WL 5454211, at *5 (W.D. Mo. Oct. 24, 2014) (upholding an ALJ's

decision because it provided a "clear bridge between the substance of the RFC and the medical records"). Since the ALJ did not do so here, this Court must remand. *Durr-Irving v. Colvin*, 600 F. App'x 998, 1003–04 (7th Cir. 2015) (requiring ALJ to explain how ALJ accounted for plaintiff's urinary impairments in RFC, given it was not originally discussed).[1]

What's more, there must be some support in the record for the two-hour interval that the ALJ picked. Although the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence," *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000), the RFC is ultimately a medical question. *Lauer v. Apfel*, 245 F.3d 700, 703–04 (8th Cir. 2001). Understandably, then, "some medical evidence," *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (*per curiam*), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). If there is no such evidence, the ALJ can, and must, gather some. *Snead v. Barnhart*, 360 F.3d 834, 836 (8th Cir. 2004) (reversing and remanding where the ALJ failed to develop the record); *see also McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011) (recognizing that an ALJ has "a duty to develop the record"); *Webb v. Berryhill*, 294 F. Supp. 3d 824, 879–80 (D.S.D. March 5, 2018) ("[I]f no evidence exists in the

---

[1] *Cecilia M. v. Saul*, No. 4:20-CV-05112-EFS, 2021 WL 9747960, at *11 (E.D. Wash. June 16, 2021) (remanding when ALJ failed to discuss why the RFC did not include limitation based on plaintiff's testimony of needing 5-6 bathroom breaks in an eight-hour period); *Minchew v. Berryhill*, No. 5:18-CV-56-KS, 2019 WL 772042, at *3 (E.D.N.C. Feb. 21, 2019) ("Absent specific findings concerning the frequency and duration of a claimant's bathroom usage, a court cannot determine whether the ALJ's findings are supported by substantial evidence[.]"); *Spaulding v. Astrue*, 702 F. Supp. 2d 983 (N.D. Ill. 2010) (remanding because ALJ's failure to articulate findings regarding frequency and duration of bathroom breaks precluded meaningful judicial review). *Kelly S. v. Comm'r of Soc. Sec.*, -- F. Supp.3d -- No. 1:21-CV-00023 EAW, 2022 WL 17330779, at *5 (W.D.N.Y. Nov. 30, 2022) ("Without further explanation, the Court is left with the impression that the ALJ simply determined, without consideration of the evidence in the record or further explanation, that the typical two breaks and a lunch period would suffice to accommodate Plaintiff's condition.").

record regarding functional limitations from obesity and [other] impairments, the ALJ should obtain medical evidence regarding that issue.").

The Commissioner failed to identify any support for the two-hour period between bathroom breaks in the record, and this Court does not see any. At most, the Commissioner points to the various contradictions she perceives between Mr. Marriott's testimony and the record. Even if there were contradictions—there aren't, as the Court will soon explain—*discounting* Mr. Marriott's testimony is not the same as *supporting* the RFC that the ALJ ultimately crafted. SSR 16-3p, 2017 WL 5180304, at *10 (the ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."). There must be evidence supporting the two-hour interval. There is none.

At most, the medical records indicate, regularly, that Mr. Marriott must use the restroom "frequently" because of his severe urinary impairments. Tr. 303–09; Tr. 69; Tr. 76; Tr. 70; Tr. 77; Tr. 86; Tr. 95. But nowhere does any provider indicate that Mr. Marriott can work two hours before needing to use the restroom. They do not reference a specific frequency at all. Instead, the records regularly show Mr. Marriott's complaints that, despite extensive medical intervention—ranging from medication to major surgery—he experiences a "constant sense of needing to urinate, which persist[s] at night and prevent[s] him from sleeping." Tr. 278; Tr. 333; Tr. 326; Tr. 45; Tr. 47–49. There is simply no evidence supporting the two-hour period the ALJ chose. For that reason, remand is appropriate. *Noerper v. Saul*, 964 F.3d 738, 746–47 (8th Cir. 2020) ("There is simply no reliable evidence providing a basis for the specific conclusion that Noerper can stand or walk for 6 hours in an 8-hour workday . . . We conclude that the absence of evidence to suggest

the accuracy or propriety of the 6-hour limitation demonstrates that the ALJ did not fulfill the duty to fully develop the record."); *see also Combs*, 878 F.3d at 646 ("The ALJ 'may not simply draw his own inferences about plaintiff's functional ability from medical reports.'" (quoting *Strongson*, 361 F.3d at 1070)).

The Commissioner argues that the ALJ was within her rights to reject Mr. Marriott's testimony that he goes to the bathroom once every thirty minutes to an hour. It is the ALJ who must evaluate the intensity and persistence of any symptoms reported by a plaintiff. *See* SSR 16-3p. In that role, the ALJ must compare a plaintiff's reports to the objective medical evidence and the other evidence in the record. *See* 20 C.F.R. §§ 404.1529(c)(2)–(3), 416.929(c)(2)-(3); SSR 16-3p. The Commissioner argues that the ALJ did just that in this case, and discounted Mr. Marriott's testimony because it was not supported by medical findings, treatment history, and daily activities. Even if it had been the ALJ who relied on these arguments, they fail.

First, the Commissioner notes that Mr. Marriott has long reported that he had to use the restroom every thirty minutes because of his severe medical impairments. Tr. 45; Tr. 318. Even still, says the Commissioner, Mr. Marriott worked as a cashier at Walmart throughout his life, and he therefore "likely" worked longer than two-hour periods without a bathroom break. Of course, there is no evidence that Mr. Marriott *did* work longer than two hours at a time without using the restroom. In substance, the Commissioner asks the Court to assume that the ALJ assumed that Mr. Marriott worked for at least two hours without a restroom break, and therefore discounted his testimony. Doc. 14, at 6. There is no apparent conflict, and the ALJ did not explain why she perceived one. Remand is appropriate. *See Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020) ("[W]e do not understand the purported inconsistencies identified by the ALJ. And '[a]bsent

7

some explanation for finding an inconsistency where none appears to exist,' we will not fill in the gaps for the ALJ." (citing *Reed v. Barnhart*, 399 F.3d 917, 921 (8th Cir. 2005)).

The Commissioner also argues that Mr. Marriott did not testify that he moved from full to part-time work at Walmart because of his need to take bathroom breaks. It is true that he went part time because of his other impairments. But that does not mean that Mr. Marriott worked for two hours or longer without a restroom break, either before or after he became a part-time employee. Indeed, as far as the evidence is concerned, Walmart could very well have permitted restroom breaks every 30 minutes to an hour, as Mr. Marriott claims he needed.

The Commissioner's reference to Mr. Marriott's daily activities—time spent at the gym, church, studying the bible, and taking care of his mother—fail for the same reasons. There is no evidence that Mr. Marriott did any of these things without using the restroom, nor are any of these activities ones that Mr. Marriot *necessarily* must do without using the restroom for two hours or longer.

At bottom, while it is certainly within the ALJ's vast authority to discount a plaintiff's testimony due to contradictions between prior work history and daily activities, there must be an actual conflict and the ALJ must explain it. *See Lucus*, 960 F.3d at 1069; *Walker v. Kijakazi*, No. 6:21-CV-3235-NKL, 2022 WL 3036639, at *9 (W.D. Mo. Aug. 1, 2022). Here, on this record, there is no conflict between Mr. Marriott's testimony and his work history and daily activities.

The Commissioner's final challenge fares no better. The Commissioner argues that Mr. Marriott was not receiving medical care for his bladder impairments at his onset date. As an initial matter, the ALJ recognized this fact and still found the bladder impairments to be severe and that it requires Mr. Marriott to take additional restroom breaks throughout the day. Tr. 18; Tr. 22. But in any event, the Commissioner is correct; "a reasonable mind would expect a person with

disabling symptoms to seek medical treatment." Doc. 14, at 7 (citing *Denny v. Colvin*, No. 1:15-CV-51-JM-BD, 2016 WL 447540, at *2 (E.D. Ark. Jan. 16, 2016)). Of course, for years, Mr. Marriott did. Tr. 45–46, 53, 303, 331. Mr. Marriott was prescribed multiple medications, underwent catheterization, received a bladder stimulator, and had his prostrate surgically reduced. Even still, his symptoms remained unabated. Tr. 278; Tr. 326; Tr. 331. Mr. Marriot himself testified that he was not receiving ongoing bladder treatment because he had "already tried a lot of expensive procedures" that had been unsuccessful. Tr. 45–46. While the Commissioner—not the ALJ—makes this argument, had the ALJ taken this approach, on this record and without more explanation, it fails. SSR 16-3p requires an ALJ to consider why a claimant might not seek treatment before discounting an individual's reported limitations on that basis. *See* SSR 16-3p, 2017 WL 5180304, at **9-10. Indeed, the Commissioner's own regulations require the ALJ to consider whether "there is no further effective treatment to prescribe or recommend that would benefit the individual." *Id.* Mr. Marriott received extensive medical care for his bladder condition, and nothing helped. Nothing requires a plaintiff to continue seeking medical care for a chronic condition when doing so provides no relief.[2] Such a rule makes no sense for patients nor for the medical providers who treat them.

---

[2] That is not to say that an ALJ could not discount a plaintiff's testimony when he has never sought treatment or when there remain available medical options to treat a plaintiff's condition. Here, there is no evidence that such options exist and Mr. Marriott rejected them. At most, Mr. Marriott refused a urology referral, Tr. 326, as the Commissioner notes. But, as the medical records show, Mr. Marriott did so because the last time he saw a urologist, "there was nothing more they could do for him . . . ." *Id.*

### B. Whether Articulating RFC Using "At Least" Was Error

Mr. Marriott also argues that the ALJ erred by expressing the limitation adopted to address his frequent restroom breaks in terms of the "least" number of breaks he will need. The Court will address this issue briefly, given it has already determined that the ALJ must reassess her RFC with respect to Mr. Marriott's overactive bladder syndrome. The RFC is meant to reflect the "most" a plaintiff can do. *See* SSR 96-8p, 1996 WL 374184, at *4. While, again, this Court will not reverse an ALJ on account of a simple drafting nicety, here, the distinction is legally important. The vocational expert on which the ALJ relied identified jobs in the national economy Mr. Marriott could perform if he only needed to take a break "at least" every two hours. *See* Tr. 60–61. The Court need not belabor this point; by stating that Mr. Marriott needs to use the restroom at least every two hours, the ALJ established the floor, not the ceiling. It does not accurately reflect what Mr. Marriott can do, despite his impairments. "Because an 'RFC does not represent the least an individual can do despite her limitations or restrictions, but the most,'" the Court remands the case to the ALJ for clarification. *Freeman v. Astrue*, No. 4:10-CV-00485-NKL, 2011 WL 241951, at *5 (W.D. Mo. Jan. 24, 2011) (citing SSR 96-8p, 1996 WL 374184).[3]

### IV. SCOPE OF REMAND AND CONCLUSION

The ALJ's handling of Mr. Marriott's urinary impairments—and more specifically, how the RFC she ultimately crafted accounts for those impairments—was not harmless. The vocational expert appears to have assumed that Mr. Marriott need only take one break every two hours—as most jobs permit. If Mr. Marriott must take more frequent restroom breaks, Mr. Marriott's ability

---

[3] The Commissioner cites two Eighth Circuit cases involving an RFC articulated using restrictions with "at least." Doc. 14, at 9 (citing *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) & *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009)). In neither case did the Eighth Circuit address the "at least" language. It is enough that, in the context of this case, the ALJ's reliance on the "at least" language was not appropriate.

to perform work may change, too. Consequently, the ALJ's errors were not harmless because the Court "cannot determine whether the ALJ would have reached the same decision denying benefits[] even if [the ALJ] had followed proper procedure." *Lucus v. Saul*, 960 F.3d 1066, 1070 (8th Cir. 2020) (*quoting Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir. 2003)); *see also Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) ("To show an error is not harmless, [the claimant] must provide some indication that the ALJ would have decided differently if the error had not occurred."). Remand is appropriate.

On remand, the ALJ should consider how often Mr. Marriott must use the restroom and make explicit findings on the issue. The ALJ should then draw an explicit logical bridge from that finding to the RFC that she ultimately crafts.

The ALJ's decision is REVERSED and REMANDED for further action consistent with this Order.

/s Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: May 1, 2023
Jefferson City, Missouri